**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| FIX THE COURT, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 18-1621 (TSC) |
| | ) | |
| U.S. NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

In April 2018, Plaintiff Fix the Court, a non-partisan, grassroots organization dedicated to reform and transparency of the Supreme Court and public education regarding the same, sought public records concerning Judge Brett M. Kavanaugh's past public service, in order to inform the public rapidly in the event Judge Kavanaugh should be considered for a future vacancy on the Supreme Court. On July 9, 2018, President Trump indeed nominated Judge Kavanaugh to fill a vacancy created by Justice Anthony Kennedy's retirement. Yet despite Fix the Court's diligence in seeking vital, relevant information via the Freedom of Information Act ("FOIA") in advance of the nomination, the actions of the U.S. National Archives and Records ("NARA") to date leave serious concern that the public will not receive these records in time to consider the information before a confirmation vote. Indeed, NARA has stated that the bulk of Fix the Court's FOIA request could take years to fulfill.

Judge Kavanaugh brings to his nomination a lengthy career demanding thorough public scrutiny, and the non-public record of his activities before his appointment to the federal bench holds high value to the public. With Senate Majority Leader Mitch McConnell promising to fast-

track confirmation proceedings (with cooperation and coordination with the Trump administration), NARA's failure to meet its FOIA obligations now threatens to deprive Fix the Court and the American public of information essential to ensure that Judge Kavanaugh's appointment receives rigorous, informed debate—in the Senate and among the general public—appropriate for a critical post in a representative democracy. Fix the Court and the American public have a brief opportunity to sift the record of Judge Kavanaugh's public career and inform the Senate as it makes an effectively irreversible decision that will shape the federal judiciary for decades. Fix the Court seeks immediate injunctive relief to protect its vital interests and those of the public it serves.

## STATEMENT OF FACTS

On April 4, 2018, Fix the Court submitted a FOIA request to NARA seeking copies of the following records of Independent Counsel Kenneth Starr:

- "Complaints regarding Mr. Kavanaugh received from within the OIC [Office of Independent Counsel] Department of Justice or from members of the public;

- Digital (e-mail), print or other correspondence and attachments involving Mr. Kavanaugh, including instances where he is merely carbon copied (CC'd);

- Performance reviews of Mr. Kavanaugh and [his] service with the OIC or Department of Justice; and

- Warnings or reprimands issued regarding Mr. Kavanaugh and [his] service with the OIC or Department of Justice."

Compl. ¶ 7, ECF No. 1; Declaration of Gabe Roth in Support of Plaintiff's Motion for a Preliminary Injunction ("Roth Decl.") ¶¶ 10, 13; Ex.[1] A. Fix the Court, a non-partisan, grassroots

---

[1] Lettered exhibits referenced herein are attached to the Roth Declaration.

organization dedicated to reform and transparency of the Supreme Court and public education concerning issues related to the Court, was interested in obtaining these records related to Judge Kavanaugh's past public service, due to his inclusion on President Trump's "short list" of potential Supreme Court nominees. Roth Decl. ¶¶ 1-2, 10.[2]

On April 20, 2018, NARA sent to Fix the Court a list of boxes in NARA's possession containing records related to Judge Kavanaugh and asked that Fix the Court review NARA's file manifests to identify more specific files potentially responsive to its request. Compl. ¶ 8; Roth Decl. ¶ 14; Ex. B at 3. Fix the Court responded on the same day, identifying eight full boxes and specified items within eleven additional boxes for NARA to review and produce if responsive to Fix the Court's request. Compl. ¶ 9; Roth Decl. ¶ 15; Ex. B at 3. After brief communications on May 14, 2018 and May 22, 2018 concerning status updates and clarification of the original request, on May 30, 2018, NARA provided a preliminary assessment, confirmed in further correspondence on June 12, 2018, detailing further reviews NARA would have to perform with respect to the boxes and items identified by Fix the Court, as well as timeframes for each category of review. Compl. ¶¶ 10-12, 14; Roth Decl. ¶¶ 16-21; Ex. B at 1-2; Ex. C. With regard to most of the requested records, NARA informed Fix the Court that it would require several months to years to process the potentially responsive records.[3] Specifically, NARA indicated that a small set of items identified by Fix the Court was small enough that NARA believed could be processed in six months. Roth Decl. ¶¶ 18, 21; Ex. B at 2; Ex. C. A second set of items identified

---

[2] *See* Press Release, *President Donald J. Trump's Supreme Court List*, Nov. 17, 2017, https://www.whitehouse.gov/briefings-statements/president-donald-j-trumps-supreme-court-list/.

[3] With regard to the other requested records, NARA informed Fix the Court that the specified item in one box was determined to be nonresponsive, and the specified item in another box did not exist. As to the latter, NARA through subsequent correspondence, Fix the Court and NARA determined the correct identification of the item number in question and NARA determined it to be nonresponsive. Compl. ¶¶ 12-14; Roth Decl. ¶¶ 19-21; Ex. B at 2; Ex. C.

NARA claimed would take approximately 22 months to process. *Id.* NARA stated that the remaining items would be assigned to NARA's second-tier processing queue, which was experiencing such a substantial backlog that NARA "[was] currently processing requests received in February 2013"—in short, indicating those items could take over five years to process. *See id.* Beyond these estimated processing times, NARA provided no further information as to the scope of the records to be produced.

On July 9, 2018, President Trump nominated Judge Kavanaugh to the Supreme Court.[4] Fix the Court filed the present action on July 10, 2018, as NARA has failed either to make a determination regarding whether it will grant Fix the Court's request or to produce the requested records within twenty working days, as required by FOIA. *See* Compl., ECF No. 1; 5 U.S.C. § 552(a)(6)(A)(i). On July 12, 2018, Fix the Court submitted a request for expedited processing to NARA, stating that,

> [T]he information requested is urgently needed in order to inform the public concerning actual or alleged government activity. As you know, on July 9 President Trump announced that he has nominated Mr. Kavanaugh to the Supreme Court, and Senate Majority Leader Mitch McConnell had previously stated that the Senate will act quickly to confirm the President's nominee. The American public has a substantial and urgent need to have access to public records concerning Mr. Kavanaugh's public service record to inform its understanding of the impending confirmation hearings.

Roth Decl. ¶ 26; Ex. B at 1. Recognizing the urgency of the matter, NARA granted Fix the Court's request for expedition within hours. *See* Roth Decl. & 27; Ex. D.[5] But to date, NARA

---

[4] *Trump Chooses Brett Kavanaugh for the Supreme Court*, N.Y. Times, July 9, 2018, https://www.nytimes.com/2018/07/09/us/politics/trump-supreme-court-nominee.html.

[5] In granting the request, NARA properly conceded the existence of "[a]n urgent need to inform the public about an actual or alleged Federal Government activity" and Fix the Court's status as "a person primarily engaged in disseminating information to the public." 36 C.F.R. § 1250.28(a)(3).

has not made the required determination, produced records, or indicated to what extent expedited processing may impact the previously-quoted 22-month to five-year period for fulfilling Fix the Court's FOIA request. Roth Decl. ¶ 22; *see also* Ex. D.

## **ARGUMENT**

Judge Kavanaugh was nominated to replace Justice Anthony Kennedy on the Supreme Court of the United States on July 9, 2018, and Senate Republicans have indicated their intention to move forward with the confirmation process as soon as possible, putting the nomination to a vote no later than fall of 2018, before the November elections.[6] Because Judge Kavanaugh had been included in the president's "short list" for the Supreme Court, Fix the Court submitted a FOIA request to NARA in April 2018 seeking records concerning Judge Kavanaugh's past public service. *See* Roth Decl. ¶¶ 10-12.

Judicial opinions reflecting Judge Kavanaugh's tenure as a federal judge are readily available, but equally important records reflecting his credentials and conduct prior to his appointment to the federal bench are not. These records, which Fix the Court seeks, are highly relevant to the Senate's consideration of his nomination in the rapidly approaching confirmation hearing. Examples of pre-judicial records that bear on issues Judge Kavanaugh would be likely to encounter in cases before the Supreme Court include those reflecting:

- His work for Independent Counsel Kenneth Starr during the investigation of President Bill Clinton, including drafting portions of the report that led to the president's impeachment (the "Starr Report"); and

---

[6] *See, e.g.*, *A Senate Deadline for Kavanaugh*, Wall St. J. (July 10, 2018, 7:37 PM), https://www.wsj.com/articles/a-senate-deadline-for-kavanaugh-1531265850 ("Mr. McConnell is saying he intends to have a vote in the fall, and the goal should be to have a Justice Kavanaugh ready to sit on the High Court when it opens its new term on Oct. 1.").

- His service as Senior Associate Counsel, Associate Counsel to the President, and White House Staff Secretary for President George W. Bush, during a time of critical policy and legal decisions regarding national security and due process of law, such as the indefinite detention of inmates at a camp in Guantanamo Bay, Cuba.

These non-public records hold great public interest and should see daylight before confirmation hearings.

To date, NARA has failed to comply with FOIA's requirement that it provide a determination as to the scope of records it will produce in response to Fix the Court's request, including whether it will withhold requested records in full in or in part. Indeed, NARA has indicated that the majority of the request will take years to fulfill, once it actually starts processing the request at some undefined point in the future.

NARA's recent grant of expedited processing of the request is appropriate but insufficient. Even on an expedited track, Fix the Court has no guarantee, or even reasonable expectation, that it will receive records in time to use them in connection with Mr. Kavanaugh's pending nomination. NARA's FOIA expedition is no match for the expedition the Senate has promised to move Judge Kavanaugh's nomination. Accordingly, Fix the Court asks the Court to act now to enjoin NARA from irreparably harming Fix the Court and the public interest through its wrongful withholding of records.

Fix the Court meets the requirements for preliminary injunctive relief—indeed, if informing the public regarding an imminent lifetime appointment to the Supreme Court fails to qualify for such relief, it is hard to imagine what would. Fix the Court is likely to succeed in establishing that it is entitled to receive the requested records. Fix the Court's request implicates an urgency to inform the public, as NARA has conceded in granting Fix the Court's request for

expedited processing. Moreover, anything less than immediate relief requiring NARA to process

Fix the Court's FOIA request and produce the requested records promptly would irreparably

harm Fix the Court's ability to use the requested records to advance its mission and inform the

general public in a timely fashion about the nomination of Judge Kavanaugh. *See* Roth Decl. ¶¶

5-7, 11-12. The requested injunction would not harm NARA's interests or the interests of the

general public; in fact, it would bolster the public interest by dramatically enhancing the public's

ability to evaluate a nominee for the Supreme Court and to empower their senators to represent

them accurately in the confirmation process. Because all four of the relevant factors weigh in Fix

the Court's favor, this Court should grant the requested injunctive relief compelling NARA to

process the request promptly and produce non-exempt, responsive records on a timely basis.

## I.      THIS COURT HAS JURISDICTION TO GRANT THE REQUESTED RELIEF.

The FOIA statute itself provides jurisdiction for this Court to consider this matter and

grant all necessary injunctive relief. It states:

> On complaint, the district court of the United States . . . in the
> District of Columbia, has jurisdiction to enjoin the agency from
> withholding agency records and to order the production of any
> agency records improperly withheld from the complainant. In such
> a case the court shall determine the matter de novo . . . .

5 U.S.C. § 552(a)(4)(B). When an agency fails to comply with the applicable time-limit

provisions in the FOIA statute, a requester "shall be deemed to have exhausted his administrative

remedies with respect to such request." 5 U.S.C. § 552(a)(6)(C)(i); *see also Oglesby v. Dep't of

Army*, 920 F.2d 57, 62 (D.C. Cir. 1990) (holding that a requester may bring suit if an agency fails

to comply with statutory time limits). This includes a failure to respond to a FOIA request within

the statutorily imposed timeframe. *See Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d

61, 74 (D.D.C. 2006) ("failure to process FOIA requests in a timely fashion is 'tantamount to

denial.'") (quoting H.R. Rep. No. 93-876, at 6 (1974)). Fix the Court has therefore exhausted all applicable administrative remedies, and this claim is ripe for adjudication.

## II.    FIX THE COURT IS ENTITLED TO A PRELIMINARY INJUNCTION.

In considering a plaintiff's request for injunctive relief, a court must weigh four factors: (1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury absent injunctive relief; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest. *Al-Fayed v. C.I.A.*, 254 F.3d 300, 303 (D.C. Cir. 2001); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998). A consideration of these factors here demonstrates Fix the Court's entitlement to injunctive relief.

### A.    Fix the Court is Likely to Succeed on the Merits.

As a clear matter of established law, Fix the Court is entitled to the timely processing of its FOIA request and production of non-exempt responsive records. FOIA clearly and unambiguously provides that federal agencies—like the named defendant in this case—must make records "promptly available to any person" who reasonably describes the records they seek in accordance with established procedures. 5 U.S.C. § 552(a)(3)(A). As an initial matter, the material Fix the Court seeks—correspondence among Mr. Kavanaugh and others in connection with the Starr Report, and complaints, performance reviews, warnings, or reprimands concerning Mr. Kavanaugh's service with the U.S. Department of Justice in connection with the Starr Report—undoubtedly falls within the statutory category of agency records that an agency must produce under FOIA. *See U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144-45 (1989) (defining "agency records" as materials "create[d] or obtain[ed]" by the agency and within the agency's control at the time the request is made). In addition, the request "reasonably described"

the records sought (specifying in detail the specific records sought, and further narrowing and specifying the request in correspondence with NARA) and complied with all necessary procedures. *See* Roth Decl. ¶¶ 13-16; Ex. A; Ex. B at 2-3. Fix the Court is therefore more than likely to succeed in establishing its entitlement to the requested records.

Moreover, NARA has clearly not satisfied FOIA's requirement that NARA comply "promptly" with Fix the Court's request. Once Fix the Court submitted its initial FOIA request to NARA on April 4, 2018, it was entitled to a determination by the agency as to the scope of the records that would be produced within twenty working days. 5 U.S.C. § 552(a)(6)(A)(i); *Citizens for Responsibility and Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 182-83 (D.C. Cir. 2013) ("[T]he agency must at least indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents."). NARA has since indicated that for a small subset of potentially responsive documents, Fix the Court will not receive a determination for six months. Roth Decl. ¶¶ 18, 21; Ex. B at 2; Ex. C. For the remaining bulk of potentially responsive records, NARA indicated that Fix the Court should not expect a determination at least 22 months, if not in excess of five years. *Id.* This extreme delay amounts to nothing less than a denial of Fix the Court's request. *See Wash. Post*, 459 F. Supp. 2d at 74 ("failure to process FOIA requests in a timely fashion is 'tantamount to denial.'") (quoting H.R. Rep. No. 93-876, at 6 (1974)).

Fix the Court will ultimately prevail in demonstrating its entitlement to timely processing and prompt disclosure of any non-exempt records responsive to its FOIA request. FOIA provides clear statutory directives to agencies in responding to FOIA requests, and NARA has violated them. In the meantime, Fix the Court urgently needs NARA to fulfill its obligations. Judge

Kavanaugh has been nominated. Senator McConnell seeks a rapid confirmation. Time is of the essence.

### B.   Fix the Court Will Be Irreparably Harmed Absent the Requested Relief.

Fix the Court will be harmed irreparably if NARA does not promptly process its request and produce non-exempt records, especially if further delays prevent disclosure of these records until after the Senate has made a decision on Judge Kavanaugh's nomination. Only preliminary injunctive relief can address this urgent need and the specter of irretrievably losing Fix the Court's rights under FOIA. As this Circuit has long held, "stale information is of little value." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).

Judge Kavanaugh's nomination has triggered the exigency Congress envisioned in crafting FOIA's expedition provisions. For that reason, Fix the Court requested expedited processing from NARA—but that request alone will be inadequate to protect its rights.[7] *See* Roth

---

[7] In April 2018, when Fix the Court submitted its initial FOIA request to NARA seeking records related to Judge Kavanaugh, sustained speculation that Judge Kavanaugh was a likely nominee in the event of a vacancy would likely have supported a request for expedited processing. *See, e.g.*, Adam Liptak, *How Trump Chose His Supreme Court Nominee*, N.Y. Times, Feb. 6, 2017, https://www.nytimes.com/2017/02/06/us/politics/neil-gorsuch-trump-supreme-court-nominee.html (noting speculation that "should Justice Anthony M. Kennedy decide to step down[, Judge Kavanaugh] would be a leading candidate"); Lydia Wheeler, *Trump Eyeing Second Supreme Court Seat*, The Hill (Apr. 23, 2017, 10:30 AM), http://thehill.com/regulation/court-battles/329981-trump-eyeing-second-supreme-court-seat ("[Kavanaugh] wasn't included in the original list of possible picks Trump drafted with the help of the Heritage Foundation, but he appears to be a viable candidate now."). Given the lack of an active vacancy at that time, however, Fix the Court did not initially seek expedited processing. Judge Kavanaugh's nomination materially changes the situation and makes NARA's extreme processing times all the more inexcusable. *See, e.g.*, *Wash. Post*, 459 F. Supp. 2d at 74-75 (time of the essence with respect to records relevant to upcoming election). Fix the Court has accordingly submitted a request for expedited processing, as allowed at any time by NARA's regulations. *See* 36 C.F.R. § 1250.28(c) ("You may request expedited processing . . . at any time during NARA's processing of your request or appeal."). But even though the request has been granted, NARA has not indicated how much expedited processing may reduce its previous estimates that processing will take at least 22 months, and possibly in excess of five years. The Court's assistance is still

Decl. ¶ 26; Ex. B at 1. Only accelerated review by this Court can ensure that unchecked delays do not irrevocably deprive Fix the Court of the prompt determination on its request and the value of the non-exempt records to which it is entitled under FOIA. As this Court has previously noted, "[t]o afford the plaintiff less than expedited judicial review would all but guarantee that the plaintiff would not receive expedited agency review of its FOIA request." *Wash. Post*, 459 F. Supp. 2d at 66; *see Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice ("EPIC")*, 416 F. Supp. 2d 30, 40-41 (D.D.C. 2006) ("[T]he statutory right to expedition in certain cases underlined Congress' recognition of the value in hastening release of certain information. As [the plaintiff] correctly notes, the loss of that value constitutes a cognizable harm. As time is necessarily of the essence in cases like this such harm will likely be irreparable." (internal citations and quotation marks omitted)).

Further delay in processing the request will irreparably harm the ability of Fix the Court—and the public—to obtain information in time to inform the public discussion of Judge Kavanaugh's nomination and its implications for the future of the United States Supreme Court.

Losing the ability to review Judge Kavanaugh's record would be particularly harmful to Fix the Court, whose mission is to promote transparency, accountability, and reform on the Supreme Court. Roth Decl. ¶¶ 1-2. Fix the Court's entire purpose is to use transparency to help it, and the public, assess judges' records and, in particular in connection with a nomination, a judge's fitness to be a justice of the Supreme Court and his commitment to the values and reforms Fix the Court advocates. *Id.* ¶¶ 4-6. A prompt determination and timely production of non-exempt records would equip Fix the Court to enhance the public debate on these issues and

---

urgently needed to protect the interests of both Fix the Court and the general public, for the reasons articulated in this motion.

to raise awareness of reforms Fix the Court believes are necessary to improve the Supreme

Court's transparency and accountability. *Id.* ¶ 9. These records therefore possess unique value

while Judge Kavanaugh's nomination is pending and is a subject of widespread public debate,

and that value will evaporate when the Senate makes its decision on Judge Kavanaugh's

nomination and the public debate ends.

The records Fix the Court seeks from NARA are particularly relevant to its mission of

promoting accountability and transparency with regard to the Supreme Court, and timely receipt

of these records is essential for Fix the Court to participate in the public debate on these issues.

Specifically, the records at issue here involve Judge Kavanaugh's work with Kenneth Starr, the

Independent Counsel appointed to investigate issues related to then-sitting President Clinton.

Judge Kavanaugh's experience, conduct, legal assessments, and views expressed in connection

with that investigation will provide essential information about his stance regarding

accountability for presidents, including the limits on criminal or other investigations of sitting

presidents. There is a distinct possibility that the Supreme Court will be called upon to decide

similar issues involving the ongoing special counsel investigation related to President Trump and

many of his associates, including potential controversies over the president's obligations to

respond in the event the special counsel issues a subpoena for his testimony.[8] Judge Kavanaugh's

experience with an analogous investigation, and the influence that experience would have on his

---

[8] *See, e.g.*, Adam Liptak, *Showdown on a Trump Subpoena Could Overshadow Brett Kavanaugh's Confirmation*, N.Y. Times, July 10, 2018, https://www.nytimes.com/2018/07/10/us/politics/brett-kavanaugh-trump-mueller-subpoena.html ("'It is not at all far-fetched to think that the question of whether President Trump must respond to a subpoena could come before the Supreme Court shortly after the confirmation process,' said Walter Dellinger, who served as acting United States solicitor general in the Clinton administration.").

reasoning as a Supreme Court justice, is therefore directly relevant to Fix the Court's focus on accountability, transparency, and the integrity of the Court. Deferring receipt of these records would deprive Fix the Court of its opportunity to participate meaningfully in advocacy on these issues at the core of its mission, including disseminating information that would promote robust public discourse on the Court's commitment to its role as a nonpartisan and unbiased check on the executive branch. *See* Roth Decl. ¶¶ 2-9.

Our system of representative democracy depends upon an informed citizenry. That principle animates FOIA. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."). Fix the Court's public advocacy embodies that principle. Its work strives to provide the public with important information about the Supreme Court and, in this case, an individual who may join it. Roth Decl. ¶¶ 5-6. The public can in turn use that information to influence the nomination process, which is often shaped by constituents' communications to their elected officials about their support for or opposition to a nominee. Members of the public cannot reliably fulfill that role or meaningfully participate in the process without adequate information on which to base their opinions, and organizations like Fix the Court cannot inform and participate in the public discourse about crucial government institutions and reforms without access to information about government activities. In light of the Senate Majority Leader's announced commitment to fast-track a decision on Judge Kavanaugh's nomination, there is an urgent need to inform the public—now—about his legal career and qualifications for a lifetime appointment to the nation's highest court.

If NARA is allowed to drag its feet in processing Fix the Court's request and the Senate confirms (or votes not to confirm) Judge Kavanaugh without the public having the benefit of the insight contained in the records sought by this request, the public's ability to participate meaningfully in the debate will have been irreparably harmed, as will Fix the Court's interest in obtaining its statutorily-guaranteed access to these records and using those records in support of its reform and accountability mission.

This case is therefore much like *Washington Post v. Department of Homeland Security*, in which the plaintiff sought visitor logs for the Vice President's office and residence, which the plaintiff asserted would "assist the public in the degree to which lobbyists and special interest representatives may have influenced policy decisions of the Bush administration." 459 F. Supp. 2d at 65 (internal quotation marks omitted). The plaintiff explained that "[w]ith the midterm elections looming, any delay in processing this request would deprive the public of its ability to make its views known in a timely fashion." *Id.* Issuing its opinion in October of 2006, this Court concluded that "[b]ecause the urgency with which the plaintiff makes its FOIA request is predicated on a matter of current national debate, due to the impending election, a likelihood for irreparable harm exists if the plaintiff's FOIA request does not receive expedited treatment." *Id.* at 75.[9] The same is true here, with the Senate rushing to take up Judge Kavanaugh's nomination before the upcoming midterm elections in November. The nomination has attracted widespread media and public interest and general recognition that the Senate's decision on his nomination has the potential to alter the balance of the Supreme Court, and the future of its jurisprudence on

---

[9] In subsequent, unrelated litigation, the D.C. Circuit held that White House visitor logs are not "agency records" for purposes of FOIA. *See Judicial Watch v. U.S. Secret Service*, 726 F.3d 208, 228-29 (D.C. Cir. 2013). However, nothing in that decision affects this Court's analysis regarding irreparable harm in *Washington Post v. Department of Homeland Security*, 459 F. Supp. 2d 61 (D.D.C. 2006).

fundamental constitutional questions, for decades.[10] The window for public education and discussion will be open only briefly, and it is imperative that Fix the Court receive the records it seeks before that window closes. *See Elec. Frontier Found. v. Office of the Dir. of Nat'l Intelligence*, 542 F. Supp. 2d 1181, 1187 (N.D. Cal. 2008) ("Although, and perhaps because, the Court cannot predict the timing of passage of the legislation in light of the ongoing debate in the legislature and with the Administration, the Court finds that delayed disclosure of the requested materials may cause irreparable harm to a vested constitutional interest in 'the uninhibited, robust, and wide-open debate about matters of public importance that secures an informed citizenry.'") (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

Indeed, by now it is almost axiomatic that "stale information is of little value." *Payne*, 837 F.2d at 494; *accord Calderon v. U.S. Dep't of Ag.*, 236 F. Supp. 3d 96, 114 (D.D.C. 2017); *see also Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96, 110 (D.D.C. 2017) ("District courts in this circuit have recognized that, where an obligation to disclose exists, plaintiffs may suffer irreparable harm if they are denied access to information that is highly relevant to an ongoing public debate." (citing *Wash. Post*, 459 F. Supp. 2d at 75; *EPIC*, 416 F. Supp. 2d at 41)). Thus, "failure to process FOIA requests in a timely fashion is 'tantamount to denial.'" *Wash. Post*, 459 F. Supp. 2d at 74 (quoting H.R. Rep. No. 93-876, at 6 (1974)). That is no doubt why courts in this jurisdiction have repeatedly issued preliminary

---

[10] *See, e.g.*, Stephen Jessee & Neil Malhotra, *The Chart That Shows the Supreme Court Will Be Out of Step With the Country*, N.Y. Times, July 12, 2018, https://www.nytimes.com/2018/07/12/opinion/kavanaugh-supreme-court-right.html (arguing that "[i]f Judge Brett Kavanaugh joins the Supreme Court, it will mark a sharp move to the right"); Oliver Roeder & Amelia Thomson-DeVeaux, *How Brett Kavanaugh Would Change the Supreme Court*, FiveThirtyEight (July 9, 2018, 9:34 PM), https://fivethirtyeight.com/features/how-brett-kavanaugh-would-change-the-supreme-court/; Brian Bennett, *How Brett Kavanaugh Could Change the Supreme Court—and America*, Time, July 12, 2018, http://time.com/5336621/brett-kavanaugh-supreme-court/.

injunctions in FOIA cases where the requester seeks information urgently needed to inform a pending or developing situation. *See, e.g.*, *id.* at 74-75 (finding irreparable harm where requested records could inform public opinion in advance of upcoming election); *EPIC*, 416 F. Supp. 2d at 40-41 (finding irreparable harm where requested records related to "current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program"); *Aguilera v. FBI*, 941 F. Supp. 144, 151-52 (D.D.C. 1996) (finding irreparable harm where requested records related to prisoner's challenge to conviction while already serving prison sentence); *Cleaver v. Kelley*, 427 F. Supp. 80, 81-82 (D.D.C. 1976) (granting preliminary injunction for records needed for upcoming criminal trial); *cf. Sai v. Transp. Sec. Admin.*, 54 F. Supp. 3d 5, 10-11 (D.D.C. 2014) (finding no irreparable harm because plaintiff offered no evidence that requested records would be of "vital public interest for an upcoming congressional election or congressional or agency decision-making process requiring public input" (internal citations and quotation marks omitted)).

As in many of those cases, Fix the Court's ability to contribute to the public's understanding of the qualifications of the nominee to the Supreme Court will be irreparably harmed if NARA is not required to promptly process Fix the Court's FOIA request and produce all responsive documents on an accelerated schedule. NARA itself recognizes this reality, and through this motion, Fix the Court seeks judicial intervention to ensure NARA will comply with its obligations to expedite disclosure.

### C.    The Requested Relief Will Not Burden Others' Interests.

No other interests would be harmed by granting Fix the Court its requested relief. To be sure, NARA itself cannot claim to be harmed by an order compelling it to comply with its statutory obligations. In the past, NARA has been able to marshal the resources necessary to

review voluminous records of extraordinary and urgent importance to the public. For example, while the Senate considered Justice Elena Kagan's nomination to the Supreme Court, NARA processed and made nearly 170,000 pages of material from the Clinton Presidential Library available to the public over approximately six weeks.[11] There is no reason to believe that a similar effort is not practicable here.

Nor would granting Fix the Court relief unduly burden other FOIA requesters. The whole purpose of the addition of the expedited processing provision in 1996 was to prioritize requesters with an urgent need for information. *See EPIC*, 416 F. Supp. 2d at 36 (explaining 1996 amendment adding expedited processing requirements). Thus, Congress itself contemplated that certain requesters would go to the head of the queue upon a showing of compelling need—as NARA agrees Fix the Court has made in this instance. *See* Roth Decl. ¶ 27; Ex. D. Thus, an order from this Court that NARA promptly process Fix the Court's request and provide all non-exempt responsive records on an accelerated schedule set by this Court will not harm the interests of the non-moving party or any other entity.

**D.    The Public Interest Favors the Requested Relief.**

A preliminary injunction is indispensable to protect the public's right to government transparency and essential interest in informed and meaningful participation in the Senate confirmation process. Consequently, the requested relief clearly serves the public interest.

First, courts in this jurisdiction have long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); *accord Wash. Post*, 459 F.

---

[11] AOTUS Blog, *Processing the Presidential Records of Elena Kagan*, THE NATIONAL ARCHIVES, June 22, 2010, https://aotus.blogs.archives.gov/2010/06/22/processing-the-presidential-records-of-elena-kagan/.

Supp. 2d at 76. The very existence of the Freedom of Information Act is rooted in the self-evident premise that transparency and disclosure are a public benefit in a participatory democracy. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772-73 (1989); *see also Ctr. to Prevent Handgun Violence v. U.S. Dep't of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999) ("There is public benefit in the release of information that adds to citizens' knowledge" of government activities). NARA's previous indications that its processing of the bulk of Fix the Court's request will stretch out over years suggests that without intervention by the Court, even purportedly expedited processing will unduly defer the public benefits of transparency that FOIA is intended to protect.

But the public benefit of injunctive relief here extends far beyond the general public interest in transparency and faithful adherence to FOIA. Congress enacted FOIA to ensure that citizens are able to participate in public debate in an informed manner, and this interest grows with the gravity of public decisions at hand. *See Robbins Tire*, 437 U.S. at 242 ("The basic purpose of [the] FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."). There are few moments of public debate with urgency equal to that surrounding selection of a new justice to serve on the nation's highest court.

Courts have recognized the importance of timely disclosure when information is relevant to elections. *See, e.g.*, *Wash. Post*, 459 F. Supp. 2d at 74-75. The public's need is arguably stronger in advance of a Supreme Court confirmation, because the public will not have an opportunity to revisit this decision post-confirmation with the benefit of either hindsight or belated disclosures. Congress and the Executive Branch comprise myriad individuals and face regular elections that afford the public regular opportunities to affirm or disavow their actions

18

and to shape their priorities; while each election is significant, there are natural limits on the effects of each individual election and frequent opportunities for the public to redress errors or reverse course. Not so for the third branch of government. Vacancies on the Supreme Court are relatively rare, and lifetime appointments render the decisions on how to fill them all but irrevocable.

Although the public enjoys far less ability to influence its highest court than it wields over the political branches, the Supreme Court, and each of its justices, exerts acute influence over the day-to-day lives of the American public. As one of only nine justices on a court that has been, of late, sharply divided, Judge Kavanaugh would be in a position to have significant impact for a generation with regard to fundamental rights and equal protection of the laws and to exert substantial, even dispositive, influence on resolution of cases guiding the relationship between the branches of government and defining the limits of executive and legislative power.

The public's need for an informed discourse on Judge Kavanaugh's nomination is particularly strong given brewing conflicts between President Trump and the special counsel. As noted, if the special counsel issues a subpoena for the president's testimony, the Supreme Court may imminently be called upon to decide a dispute that implicates the limits of executive power, the judiciary's role in interpreting and guarding those limits, and other core issues of government accountability, integrity, and transparency. *See Liptak, supra* note 8. While it would be important to examine any nominee's approach to such issues, Judge Kavanaugh's involvement in the independent counsel investigation of President Clinton demands exploration before he can be confirmed. The records Fix the Court has requested will provide a rich source of information about Judge Kavanaugh's past conduct, views, and reasoning on these issues, which will promote probing the consistency of his current views with his previous positions and allow the

public, and the Senators who represent them, to assess whether those views turn on sound and impartial legal reasoning or change with the party or ideology of the president facing investigation. Such a robust dialogue is necessary both to ensure that the Senate's decision is well informed and to reassure that public that judicial decisions essential to the integrity and accountability of the government will be based on the law, free from partisan politics or pressures.

The public has only one opportunity to assess Judge Kavanaugh's fitness for this august position and to convey its views and concerns to the senators entrusted with weighing his nomination. A preliminary injunction ensuring timely processing and disclosure of records reflecting Judge Kavanaugh's record of government service maximizes that public's ability to avail itself of that opportunity.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Fix the Court respectfully requests that this Court grant a preliminary injunction requiring NARA to process Fix the Court's FOIA request and produce all non-exempt responsive records and an index justifying the withholding of any withheld records by such date as the Court deems appropriate.

Dated: July 16, 2018                    Respectfully submitted,

                                        */s/ Elizabeth France*
                                        Elizabeth France
                                        D.C. Bar No. 999851

                                        */s/ John E. Bies*
                                        John E. Bies
                                        D.C. Bar No. 483730

                                        */s/ Austin R. Evers*
                                        Austin R. Evers
                                        D.C. Bar No. 1006999

                                        AMERICAN OVERSIGHT
                                        1030 15th Street NW, B255
                                        Washington, DC 20005
                                        (202) 869-5244
                                        beth.france@americanoversight.org
                                        austin.evers@americanoversight.org

                                        *Counsel for Plaintiff Fix the Court*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on July 16, 2018, I caused a copy of the foregoing Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction to be hand-delivered to defendant at the following address:

U.S. National Archives and Records Administration
8601 Adelphi Road
College Park, MD 20740

In addition, a courtesy copy has been delivered to:

Jessie K. Liu
U.S. Attorney for the District of Columbia
555 4th Street NW
Washington, DC 20530

Dated: July 16, 2018         */s/ Elizabeth France*
                Elizabeth France
                D.C. Bar No. 999851
                AMERICAN OVERSIGHT
                1030 15th Street NW, B255
                Washington, DC 20005
                (202) 869-5244
                beth.france@americanoversight.org

                *Counsel for Plaintiff Fix the Court*